IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID C. TATE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-5404 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                    February 3, 2015

      Pro se Plaintiff David C. Tate, a prisoner at the State Correctional Institution at Pittsburgh, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth Amendment rights stemming from a search of his apartment and his subsequent arrest, imprisonment, and prosecution for prohibited possession of a firearm. He names as Defendants the City of Philadelphia, the Philadelphia District Attorney's Office, the Philadelphia Police Department, Officer Robert Redanauer, and Assistant District Attorney (ADA) Rich Bauer. The City of Philadelphia, the Philadelphia District Attorney's Office, and ADA Bauer filed motions to dismiss. For the following reasons, the Court will grant the motions and sua sponte dismiss Tate's claims against the Philadelphia Police Department. The Court will also grant Tate leave to amend his Complaint to correct the deficiencies described herein.

**BACKGROUND**

      In his initial Complaint, Tate alleges that, on January 18, 2011, officers of the Philadelphia Police Department came to his apartment claiming they had a warrant to search the premises and arrest his girlfriend. Tate asserts the officers lied about the warrant, handcuffed him, ransacked the apartment, and humiliated his girlfriend. The officers found a gun during their search and asked Tate whether he knew who owned the gun. When Tate responded that he did not know, the police arrested him and his girlfriend, and he was charged with prohibited

possession of a firearm in Philadelphia Municipal Court. *See Commonwealth v. Tate*, Docket No. MC-51-CR-0002517-2011 (Phila. Mun. Ct.). Officer Redanauer is listed on the docket as the arresting officer. On December 15, 2011, Tate was acquitted of the charge in the Philadelphia Court of Common Pleas. *See Commonwealth v. Tate*, Docket No. CP-51-CR-0005863-2011 (Phila. Ct. Com. Pl.).

On October 23, 2013, Tate filed an Amended Complaint in response to the Court's September 23, 2013, Order directing him to further clarify his claims against each Defendant. In the Amended Complaint, he asserts Officer Redanauer violated his constitutional rights by searching his home without a warrant, arresting him, subjecting him to false charges, and providing false testimony to the state court. He claims ADA Bauer maliciously prosecuted him, presented false testimony to the state court, and "failed to make sure [Officer Redanauer] entered [Tate's] residence legally." Am. Compl. 2. Tate asserts the Police Department improperly approved Officer Redanauer's police report and subjected Tate to unlawful arrest, imprisonment, and prosecution. As to the District Attorney's Office, he claims the Office employed ADA Bauer and is responsible for assigning criminal cases for prosecution; thus, the Office should be liable for the same claims he asserts against Bauer. Lastly, he asserts claims against the City of Philadelphia for employing the other Defendants and allegedly failing to properly supervise them.

Because Tate indicated in his Amended Complaint that he was awaiting trial, the Court stayed the case pending the resolution of the criminal proceeding. Tate subsequently informed the Court by letter dated May 8, 2014, that he had been acquitted in his most recent criminal case and explained that his lawsuit in this Court is not based on that case, but instead concerns the state criminal case cited in his initial complaint: *Commonwealth v. Tate*, Docket No. CP-51-CR-

0005863-2011 (Phila. Ct. Com. Pl.). Based on Tate's letter, the Court removed the case from suspense and directed service.

Service was effected as to all Defendants except the Philadelphia Police Department and Officer Redanauer. The District Attorney's Office, in conjunction with ADA Bauer, and the City of Philadelphia filed separate motions to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Tate filed motions to dismiss Defendants' motions to dismiss, which the Court will construe as oppositions to Defendants' motions.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims, accepting the well-pleaded factual allegations as true and disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal,* 556 U.S. at 679). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court may consider matters of public record in deciding a motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Where, as here, the plaintiff is proceeding pro se, "the court has an obligation to construe the complaint liberally." *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir. 2009). Furthermore, as Tate is proceeding in forma pauperis, the Court may sua sponte dismiss his claims pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. The standard for dismissal under § 1915(e)(2)(B)(ii) is the same standard that applies under Rule 12(b)(6). *See Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

### A. City of Philadelphia

The City argues Tate has failed to state a claim because he did not allege that any violation of his rights stemmed from a municipal policy or custom, nor did he identify a municipal policy maker. Tate responds that the Police Department and District Attorney's Office were acting on behalf of the City, and he can establish the police officers "illegally carried out" a warrant or court order and Officer Redanauer and ADA Bauer presented false information in his criminal case. He also points out that in his Amended Complaint he alleged the City failed to supervise the Defendants.

A municipality, however, may not be held liable under § 1983 based solely on the conduct of its employees. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Rather, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *See McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (alteration in original) (citations omitted). "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *Id.* at 658. In addition, the plaintiff must establish the municipality was the cause of any deprivation of constitutional rights; the municipality can only be accountable if the deprivation was the *result* of a municipal custom or policy. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985).

4

Further, if the policy at issue "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation and internal quotation marks omitted). "Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train,'" although liability may be based on a single incident if the need for training is sufficiently obvious. *Id.* at 223 (alteration in original) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)).

Tate's claims against the City are based on the actions of City employees in searching his home, arresting him, and prosecuting him. *See* Am. Compl. at 2 ("The City of Philadelphia[] is being sued because all the previous 4 defendants are employed, financed, and contracted by the City."); Mot. to Dismiss Def. No. Five City of Phila. Mot. to Dismiss at 1 (explaining his factual allegations against the City are based on proof that "a municipal or court order warrant was illegally carried out by the Philadelphia Police Dept. within the Philadelphia jurisdiction" and there is "no higher oversight in the city" to catch the lies of the police and prosecutor). The City, however, may not be held liable under § 1983 "solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691 (emphasis omitted). Furthermore, Tate's generalized, conclusory allegation that the City "failed poorly to supervise its co-defendants," Am. Compl. 2, is insufficient to state a claim. The only policy or custom Tate describes that caused his alleged deprivation is a failure to train, but he does not allege any pattern of constitutional violations demonstrating such a failure. Nor does Tate's general allegation support municipal liability based upon a single incident, as he does not sufficiently assert the need for training was sufficiently obvious. *See Moriarty v.*

*DiBuonaventura*, No. 14-2492, 2014 WL 3778728, at *7 (D.N.J. July 31, 2014) (finding the plaintiff failed to demonstrate an illegal policy or custom could be inferred from a single unconstitutional act by a municipal policy maker because he simply alleged, in a conclusory fashion, that the municipality failed to train its officer). Accordingly, the Court will dismiss Tate's claim against the City for failure to train without prejudice to reassertion. In his reassertion, Tate shall specifically describe the policy or custom he alleges resulted in the violation of his constitutional rights, point to a pattern of constitutional deprivations, and/or demonstrate how the City acted with deliberate indifference. Tate shall not assert any claims against the City that are based on the fact the City employs the other Defendants.

**B. District Attorney's Office and Philadelphia Police Department**

The District Attorney's Office argues it may not be sued as a department or division of the City of Philadelphia. In response, Tate essentially reasserts his claims, i.e., the Office allowed ADA Bauer to prosecute false charges against him.

The Court will dismiss Tate's claims against the District Attorney's Office with prejudice because the District Attorney's Office may not be sued separately from the City. *See* 53 Pa. Cons. Stat. Ann. § 16257 (explaining that all suits against any department of the City of Philadelphia must be brought in the name of the City itself because the departments do not have an independent corporate existence); *Johnson v. Delaware Cnty.*, No. 07-2335, 2008 WL 2600302, at *1 n.1 (E.D. Pa. June 30, 2008) (recognizing a county district attorney's office is not an entity for purposes of § 1983 liability); *Domenech v. City of Philadelphia*, No. 06-1325, 2007 WL 172375, at *2 (E.D. Pa. Jan. 18, 2007) (same). Even if the Court construes Tate's claims against the District Attorney's Office as having been brought against the City, the claims fail

6

because they are based solely on actions and/or inactions of City employees. *See Monell*, 436 U.S. at 691.

Although the Philadelphia Police Department has not been served, the Court will sua sponte dismiss the claims against it, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Like the District Attorney's Office, the Philadelphia Police Department may not be sued separately from the City of Philadelphia. *See Powell v. DeCarlo*, No. 12-762, 2012 WL 3104839, at *6 (E.D. Pa. July 31, 2012) ("[The Philadelphia Police Department (PPD)]" does not have a separate corporate existence, and thus any claim against PPD is effectively a claim against the City of Philadelphia."). Additionally, Tate's conclusory allegations against the Police Department do not establish a basis for municipal liability as he alleges no policy or custom that caused a violation of his constitutional rights.

Because any amendment would be futile, the Court will dismiss Tate's claims as to the District Attorney's Office and the Police Department with prejudice.

### C. ADA Bauer

Tate alleges ADA Bauer presented false testimony and evidence to the state court in support of a search warrant for Tate's apartment and maliciously prosecuted him on false charges. Bauer argues he is absolutely immune from Tate's claims.[1]

A prosecutor is absolutely immune from individual liability under § 1983 when performing the traditional functions of an advocate and for acts taken "within the scope of his duties in initiating and pursuing a criminal prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 410

---

[1] Tate also notes that he is suing Bauer in his individual and official capacities. "[S]uits brought against government officials in their official capacities are treated as suits brought against the governmental unit of which they are officials." *Cruz v. City of Phila.*, No. 07-493, 2007 WL 2317372, at *4 (E.D. Pa. Aug. 7, 2007). Thus, Tate's "official capacity" claims against ADA Bauer are, in essence, claims against the City of Philadelphia. Those claims fail because, as discussed above, the City's liability may not be premised solely upon ADA Bauer's actions.

(1976); *see Kalina v. Fletcher*, 522 U.S. 118, 131 (1997). However, "absolute immunity does not extend to '[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Yarris v. Cnty. of Del.*, 465 F.3d 129, 135 (3d Cir. 2006) (alteration in original) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Additionally, "where a prosecutor's role as advocate has not yet begun, or where it has concluded, absolute immunity does not attach." *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008).

A prosecutor is entitled to absolute immunity when he serves as an advocate in a probable cause hearing for the issuance of a search warrant. *See Burns v. Reed*, 500 U.S. 478, 492, 496 (1991); *see id.* at 491 ("The prosecutor's actions at issue here—appearing before a judge and presenting evidence in support of a motion for a search warrant—clearly involve the prosecutor's role as advocate for the State, rather than his role as administrator or investigative officer . . . ." (citations and internal quotation marks omitted)). However, a prosecutor is not immune when he acts as a witness in such proceedings because he is not acting as an advocate; testifying about facts is the function of a witness, not a lawyer. *See Kalina*, 522 U.S. at 129-31 (finding a prosecutor did not have absolute immunity for making false statements of fact in an affidavit supporting an application for an arrest warrant because she was acting like a complaining witness rather than a lawyer when she attested to the truth of the averments in the certification "under penalty of perjury"); *Buckley*, 509 U.S. at 274 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."). *But see Kalina*, 522 U.S. at 129 (noting that the preparation and filing of the affidavit supporting the application of an arrest warrant was protected by absolute immunity as it was part of the advocate's function).

8

Even if Bauer's actions disrespected the court system or violated Tate's rights, therefore, Bauer is entitled to absolute immunity for any claims stemming from Bauer's prosecution of Tate because these acts were taken within the scope of his duties as a criminal prosecutor. *See Imbler*, 424 U.S. at 427-29 (explaining policies behind prosecutorial immunity and noting that other checks on prosecutors "undermine the argument that the imposition of civil liability is the only way to insure that prosecutors are mindful of the constitutional rights of persons accused of crime"). The Court will therefore dismiss with prejudice any claims based on Bauer's initiation of criminal proceedings or prosecution of Tate.

The only claims for which ADA Bauer is not clearly entitled to absolute immunity is Tate's allegation that Bauer assisted the police in presenting false testimony to two judges and failed to make sure Officer Redanauer entered Tate's apartment legally. Although his allegations are difficult to decipher, Tate seems to allege that Bauer presented false testimony to judges in relation to the search at Tate's apartment, which indicates Bauer may have been acting as a witness and not an advocate. Because it is unclear based on the pleadings when Bauer provided this testimony (either before or after the search) and in what capacity Bauer was acting when providing it, Bauer may not be entitled to absolute immunity as to these claims. *See Buckley* 509 U.S. at 276 ("A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial.").

Even if Bauer does not have absolute immunity as to the claims related to the illegal search, however, Tate has not pled sufficient facts to establish a plausible claim for relief because Tate did not establish that Bauer was personally involved in the allegedly illegal search. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights

9

action must have personal involvement in the alleged wrongs to be liable . . . ." (citation and internal quotation marks omitted)). In any second amended complaint, therefore, Tate must (1) sufficiently allege Bauer was not acting as an advocate when presenting evidence to the state court related to the search of Tate's apartment and (2) more clearly describe Bauer's role in the search or any allegedly illegal warrant. Accordingly, the Court will dismiss the claims related to the search of Tate's apartment without prejudice to reassertion.[2]

---

[2] ADA Bauer argues in the alternative that Tate's claims are time barred. Pennsylvania's two-year limitations period applies to Tate's claims for illegal search, false arrest, false imprisonment, and malicious prosecution. *See* 42 Pa. Cons. Stat. Ann. § 5524 (directing that actions for various causes of action must be commenced within two years); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (explaining that the statute of limitations for a claim pursuant to 42 U.S.C. § 1983 is based on the law of the state in which the cause of action arose). Tate's apartment was searched and he was arrested and charged with a crime on January 18, 2011, but he did not file his original Complaint until more than two years later on September 12, 2013. Tate responds that his claims are not time barred because "[t]he falsehood of the case wasn't exposed of and completed until 12/15/2011," and "all information and discovery wasn't available the day of the arrest." Mot. to Dismiss Def. Phila. Dist. Att'y's Office and ADA's Rich Bauer Mot. to Dismiss 2.

A § 1983 claim accrues "when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citation and internal quotation marks omitted). The limitations period may be tolled in accordance with state law. *Id.* Pennsylvania allows for tolling based on the discovery rule, which tolls the limitations period until the plaintiff knew, or through the exercise of reasonable diligence should have known, of his injury and its cause. *See Knopick v. Connelly*, 639 F.3d 600, 607 (3d Cir. 2011). "[W]hile a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt*, 770 F.3d at 251 (internal citation omitted).

Tate's false arrest and any related false imprisonment claims are time barred; these claims accrued by January 19, 2011—the date on which the public docket for his criminal proceeding reflects he was arraigned. *See Commonwealth v. Tate*, Docket No. MC-51-CR-0002517-2011 (Phila. Mun. Ct.); *see also Wallace*, 549 U.S. at 397 ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 112 (3d Cir. 2013) (per curiam) (noting a plaintiff claiming false arrest generally "has reason to know of [his] injury" upon his arrest); *Petaccio v. Davis*, 76 F. App'x 442, 445 (3d Cir. 2003) ("It is axiomatic that [plaintiff] knew or should have known the basis for his § 1983 action at the time

### D. Officer Robert Redanauer

Officer Redanauer has not yet been served with Tate's Amended Complaint, but several of the claims Tate asserts against this Defendant are barred by the statute of limitations. *See supra* note 2. Therefore, if Tate files a second amended complaint, the only claims he may assert against Officer Redanauer are those stemming from the search of Tate's apartment. In addition, because any claims against Officer Redanauer in his official capacity are treated as a suit against the City and the City may not be held liable on a respondeat superior basis, *see supra* note 1, Tate may sue Officer Redanauer only in his individual capacity.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

of his initial arrest and detention."). Even if Tate did not have every fact in support of his claim at the time he was initially detained, he had reason to know of his injury by virtue of his arrest and detention. *Cf. Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985) ("[T]he accrual date is not postponed until the injured party knows every fact necessary to bring his action.").

Tate's malicious prosecution claim asserted against ADA Bauer is timely because it did not accrue until the charges terminated in Tate's favor on December 15, 2011. *See Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989). For the reasons discussed above, however, it is barred by ADA Bauer's absolute prosecutorial immunity.

Tate's claims based on the search of his apartment may be timely. These claims accrued on the date of the search, January 18, 2011. *See Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012) (per curiam) (noting claims based on an illegal search generally accrue on the date of the search). However, Tate alleges Officer Redanauer and ADA Bauer either lied about having a warrant to search his apartment or lied in order to obtain a warrant, and it is not clear from either the Complaint or the Amended Complaint when Tate knew, or through the exercise of diligence should have known, these Defendants performed the alleged acts. Accordingly, Tate's illegal search claim is not subject to dismissal at this time based on the statute of limitations. *See Schmidt*, 770 F.3d at 252 (reversing dismissal of claims as untimely when it was unclear whether discovery rule saved claims).

11