IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID C. TATE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-5404 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

**<u>MEMORANDUM</u>**

**Juan R. Sánchez, J.**                                                                    **August 24, 2015**

Pro se Plaintiff David C. Tate, a prisoner, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth Amendment rights stemming from a search of his apartment and his subsequent arrest, imprisonment, and prosecution for prohibited possession of a firearm. The only remaining Defendants in this case—the City of Philadelphia and Officer Robert Redanauer—have filed a motion for summary judgment.[1] Upon review of the Defendants' motion and Tate's response thereto, the Court finds there is a material issue of fact as to whether Tate's claims against Officer Redanauer are barred by the statute of limitations. The Court also finds, however, Tate has failed to demonstrate the City had a custom, policy, or practice that was the moving force behind any constitutional violation, and all of the Tate's claims against the City are therefore dismissed with prejudice.

---

[1] In his Amended Complaint, Tate originally named as Defendants the City of Philadelphia, the Philadelphia District Attorney's Office, the Philadelphia Police Department, Officer Redanauer, and Assistant District Attorney (ADA) Rich Bauer. The City, the District Attorney's Office, and ADA Bauer filed motions to dismiss. By Order dated February 2, 2015, this Court granted the motions and also sua sponte dismissed Tate's claims against the Philadelphia Police Department. The Court dismissed with prejudice several of Tate's claims, but granted Tate leave to amend his claims against the City and any claims against ADA Bauer based on the search of Tate's apartment. At the time of the Order, Officer Redanauer had not yet been served with Tate's Amended Complaint. The Court found, however, that several of Tate's claims against Officer Redanauer were barred by the statute of limitations. Therefore, the Court also permitted Tate to amend his claims as to Officer Redanauer stemming from the search of Tate's apartment only.

In his Second Amended Complaint, dated February 20, 2015, Tate asserted claims only against the City and Officer Redanauer, thereby waiving his claims against ADA Bauer.

**BACKGROUND**

Tate alleges that, on January 18, 2011, officers of the Philadelphia Police Department illegally searched his apartment, damaging his possessions and humiliating his family. Tate filed his initial Complaint in September 2013.[2] In response to the Court's September 23, 2013, Order directing him to clarify his claims against each Defendant, Tate filed an Amended Complaint on October 23, 2013, to which most of the Defendants filed motions to dismiss. By Order of February 2, 2015, the Court granted the Defendants' motions and gave Tate leave to amend only his claims stemming from the search of his apartment against the City, ADA Bauer, and Officer Redanauer.

In his Second Amended Complaint, Tate asserts the police, including Officer Redanauer, entered his second-floor apartment claiming they had a warrant to search the premises and arrest his girlfriend. Tate alleges Officer Redanauer lied about the warrant, handcuffed him, ransacked the apartment, and humiliated his then-girlfriend by bringing her into the living room and/or kitchen naked and making her get dressed in front of Tate and all the officers while making fun of her weight. He claims Officer Redanauer subjected his family to cruel and unusual punishment during the search. He states the officers found a gun in the third-floor apartment during their search and when Tate told the officers he did not know who owned the gun, the police arrested him and his girlfriend. Tate was charged with prohibited possession of a firearm in Philadelphia Municipal Court. *See Commonwealth v. Tate*, Docket No. MC-51-CR-0002517-2011 (Phila. Mun. Ct.). Officer Redanauer is listed on the docket as the arresting officer. Tate claims that at some point after the arrest Officer Redanauer falsely testified that the warrant

---

[2] Tate's original Complaint and application to proceed in forma pauperis are undated. The prison official certified his prison account balance on September 12, 2013, and the Clerk of Court received and filed the application on September 16, 2013.

listed Tate's second-floor apartment, when in fact, the warrant was not for Tate's apartment.[3] The case was later transferred to the Philadelphia Court of Common Pleas, and on December 15, 2011, Tate was acquitted of the charge. *See Commonwealth v. Tate*, Docket No. CP-51-CR-0005863-2011 (C.P. Phila.).

Tate also asserts several failure-to-train claims against the City including failure to train police officers to properly execute a search warrant, including how to identify the correct residential address on the warrant and the permissible scope of a warrant, and failure to train police officers on how to perform a lawful arrest especially for a female arrestee.

**DISCUSSION**

A motion for summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (internal quotation marks omitted)). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to produce specific facts, supported by evidence in the record, showing there is a genuine

---

[3] The City does not admit there was no search warrant for Tate's apartment, but, in response to a Court Order directing it to send Tate a clear copy of the search warrant, the City claimed it was "unable to locate the search warrant or any additional police paperwork related to Plaintiff's arrest." *See* Letter from Assistant City Solicitor Aaron Shotland to Judge Juan R. Sánchez (July 23, 2015).

issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). The Court must review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## A. Officer Robert Redanauer

Officer Redanauer asserts that Tate's claims are time barred because Pennsylvania's two-year limitations period applies to Tate's claims and Tate filed his original Complaint almost three years after the search at issue. *See Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003) (noting there is a two-year statute of limitations for 42 U.S.C. § 1983 actions in Pennsylvania); *see also* 42 Pa. Cons. Stat. Ann. § 5524.

The statute of limitations constitutes an affirmative defense, and therefore, a defendant bears the burden of proving that the statute of limitations bars the plaintiff from bringing the action. *See Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002); *see also Gruber v. Price Waterhouse,* 911 F.2d 960, 963 (3d Cir. 1990). A § 1983 claim accrues "when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citation and internal quotation marks omitted). The limitations period may be tolled in accordance with state law. *Id.* Pennsylvania allows for tolling based on the discovery rule, which tolls the limitations period until the plaintiff knows, or through the exercise of reasonable diligence should have known, of his injury and its cause. *See Knopick v. Connelly*, 639 F.3d 600, 607 (3d Cir. 2011) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)). The purpose of the rule is "to mitigate, in worthy cases, the harshness of an absolute and rigid period of limitations," but the rule "cannot be applied so loosely as to nullify the purpose

for which a statute of limitations exists." *Dalrymple v. Brow*n, 701 A.2d 164, 167 (Pa. 1997) (citation omitted). The party seeking to take advantage of the discovery rule bears the burden of proving that it applies. *Id.*

The police searched Tate's apartment on January 18, 2011, but Tate did not file his original Complaint until two years and nine months later. Therefore, unless the discovery rule applies, Tate's claims based on the search of his apartment accrued on the date of the search, January 18, 2011, and they are therefore untimely. *See Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012) (per curiam) (noting claims based on an illegal search generally accrue on the date of the search). If, however, Tate found out after September 2011 that the search warrant was only for the third-floor apartment and not for his second-floor apartment, his claims of an illegal search would be timely.[4]

At this point in the litigation, it is still not clear to the Court when Tate knew, or through the exercise of diligence should have known, the search warrant was not for Tate's apartment on the second floor. The only evidence before the Court is Tate's deposition, which clarifies that Tate's allegations of false testimony concern an officer's testimony *after* the search during either a preliminary hearing or his trial. At his deposition, Tate stated, however, that he is not sure if Officer Redanauer was the officer that testified falsely as to the apartment listed in the warrant and he could not remember whether this testimony took place at a preliminary hearing or during his trial. *See* Tate's Dep. Tr. 38-41, July 2, 2015. Tate also does not explain when or how he discovered this testimony was false, and, while he mentions that he has seen the search warrant at issue, he does not state whether he saw it at a preliminary hearing, during his trial, or some other proceeding. *See id.* at 41 ("At that time my lawyer Sciolla brought in the search warrant

---

[4] The City has not argued that the search was constitutional even if the warrant was not for Tate's apartment, and the Court cannot make a finding on that issue at this time.

and it showed the warrant was for the third floor apartment and that's on testimony, that's on record."). The docket lists several preliminary hearings for Tate's case, all of which occurred prior to September 2011. In his response to the Defendants' motion to dismiss, Tate argues that his claims were not time barred because "[t]he falsehood of the case wasn't exposed of and completed until 12/15/2011," and "all information and discovery wasn't available the day of the arrest." Mot. to Dismiss Def. Phila. Dist. Att'y's Office and ADA's Rich Bauer Mot. to Dismiss 2. In his response to the Defendants' motion for summary judgment, Tate asserts that he did not know the search warrant was illegal until trial on December 15, 2011. He claims the warrant was given to his counsel for discovery, but neither the City nor Tate state when discovery was tendered.

Although Tate has not proven the application of the discovery rule, the City has not refuted Tate's claim he only learned about the contents of the warrant on December 15, 2011. There thus remains an issue of fact as to when Tate learned about the contents of the warrant, and the Government's motion for summary judgment on this ground will be denied without prejudice to reassertion.[5] At trial, Tate will need to prove that he only learned about the contents of the warrant within the two-year statute of limitations; only then will he be able to proceed on his claim that Officer Redanauer entered his apartment illegally. The Court notes that with regards to Tate's claim that Officer Redanauer subjected Tate and his family to cruel and unusual punishment, Tate had actual knowledge of his injury on January 18, 2011, and those claims are time-barred.

---

[5] Given the many preliminary hearings held in Tate's underlying criminal case, it seems likely Tate learned about the contents of the warrant prior to his trial. No evidence in the record indicates that Tate only discovered a problem with the warrant during his trial, which occurred eleven months after he had been arrested and arraigned, and had attended the preliminary hearings. He explicitly states in multiple motions, however, that he only learned of the contents of the warrant at his trial.

**B. City of Philadelphia**

Tate claims that the City has failed to train its police officers in how to properly execute search warrants. The City responds there is no genuine issue of material fact regarding this claim because Tate has not demonstrated that any violation of his rights stemmed from a municipal policy or custom.

A municipality may not be held liable under § 1983 based solely on the conduct of its employees. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Rather, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *See McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (alteration in original) (citations omitted). The plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *Id.* at 658. In addition, the plaintiff must establish the municipality was the cause of any deprivation of constitutional rights; the municipality can only be accountable if the deprivation was the *result* of a municipal custom or policy. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985). The plaintiff cannot rely on vague assertions about a police department's wrongdoings to demonstrate a municipal practice or policy; the plaintiff must point to a specific policy that caused his constitutional harm. *See, e.g.*, *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (affirming the lower court's grant of summary judgment because the record contained no evidence to support the plaintiff's claims of liability based on municipality policy when the plaintiff made only vague assertions about the police department's failure to investigate and relied almost exclusively on the single incident that gave rise to the plaintiff's claim).

If the policy at issue "concerns a failure to train or supervise municipal employees," liability under § 1983 "requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation and internal quotation marks omitted). "Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train,'" although liability may be based on a single incident if the need for training is sufficiently obvious. *Id.* at 223 (alteration in original) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)); *see Tuttle*, 471 U.S. at 823-24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved.") (plurality opinion).

Tate has failed to produce any evidence that the City failed to train, supervise, or discipline its police officers in executing search warrants or conducting arrests, or that the City permits its police officers to violate citizens' constitutional rights. Even if the police officers' conduct was unconstitutional, Tate has not produced any evidence that a City custom or policy caused his alleged injuries nor has he stated any facts showing a pattern of constitutional violations demonstrating a failure to train. He has not shown a plausible nexus between a municipal policy or custom and the allegedly illegal search of his apartment. *See* Tate's Dep. Tr. 27-29 (admitting that outside of the events of January 18, 2011, he has no other evidence that the City failed to train its police officers regarding the execution of search or arrest warrants). His claims are based on a single incident, but he does not supply any evidence that the need for

training was sufficiently obvious. In his response to the City's motion for summary judgment Tate claims Officer Redanauer had been disciplined by the Police Department for allegedly shooting a fellow officer during an arrest, which Tate claims is proof the City should have fired Officer Redanauer for his conduct and incompetence in executing policy. Even if Officer Redanauer was disciplined, however, the fact he was allowed to return to work does not demonstrate a pattern of constitutional violations on the part of City officers or a City custom or policy that lead to Tate's alleged injuries. Because there is no issue of material fact as to the City's policy or custom regarding a failure to train, the City's motion for summary judgment is granted and all claims against the City are dismissed with prejudice.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.